UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| GLENDA BRUNK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:17-CV-188-SNLJ |
| CONSECO BANK INC. and U.S. BANK N.A. AS TRUSTEE FOR CONSECO FINANCE HOME EQUITY LOAN TRUST 2002-A, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This is a foreclosure case with a commercial paper twist. Plaintiff ("Homeowner"), proceeding *pro se*, filed this case after a law firm tried to foreclose on her house on behalf of U.S. Bank N.A. Homeowner challenges the attempted foreclosure and the assignment of her Note, and the Court previously granted Homeowner's motion to temporarily restrain U.S. Bank from conducting a foreclosure sale on the home. (#5.) The matter is now before the Court on U.S. Bank's motion to dismiss (#15). The issues are ripe, and the motion will be granted in part and denied in part.

I. **Factual Background**

In late 2001, Homeowner borrowed money from Conseco Bank Inc. She signed a Note in which she promised to repay the borrowed amount, plus 14.1% interest, over thirty years. The Note was secured by a Deed of Trust on Homeowner's home, located in Ellington, Missouri. Roughly three years later, in 2004, Conseco Bank assigned the

1

mortgage to Conseco Finance Servicing Corp. f/k/a Green Tree Financial Servicing Corporation.

About nine years later, in 2013, Homeowner contacted Green Tree because "she was having trouble paying [the] mortgage at a 14 percent interest rate." (#1 at 3.) "A Green Tree agent told [Homeowner] that if she paid $2,300 the lender would re-write her mortgage at the current rate of 3.875 percent." (#1 at 3.) Homeowner paid the $2,300, but the Green Tree agent then told her "there was 'no record' of the Note, that without the Note Green[ T]ree did not know the details of her current mortgage, and without such details, the lender could not calculate a new loan rate." (#1 at 3.)

About three more years later, in 2016, "'Ditech Financial LLC f/k/a Green Tree Servicing LLC f/k/a Conseco Finance Servicing Corp.' attempted to assign [Homeowner's] mortgage to U.S. Bank N.A. as trustee for Conseco Finance Home Equity Loan Trust, 2002.A." (#1 at 3.)

The next year, in 2017, "U.S. Bank as Trustee sought to appoint Substitute Trustee Corporation of St. Louis, MO as Successor Trustee." (#1 at 4.) About four months later, "U.S. Bank as Trustee sought to appoint Milsap & Singer PC . . . as substitute trustee." (#1 at 4.) Milsap & Singer then sent a letter to Homeowner explaining that it "received [her] file for the purpose of foreclosing on the property that secures [her] Note."[1] Homeowner inquired, and Milsap & Singer sent Homeowner a package of documents.

---

[1] According to the Complaint, Milsap & Singer sent this letter two months before U.S. Bank attempted to appoint Milsap & Singer as substitute trustee. It is unclear if this is a typographical error.

The package of documents included a copy of the Note. "Attached to it were two undated loose-leaf slips of paper marked 'Allonge[2] to Note.' The first is a purported indorsement from Conseco Bank, Inc. to Conseco Finance Servicing. The second is an indorsement in blank signed by a Jana Thompson as an 'authorized agent' of Conseco Finance Servicing Corp." (#1 at 4.) About a month later, Homeowner's husband examined the relevant file at Milsap & Singer's office. "He found that the 'allonges' . . . were not in any way 'affixed' to the Note, such as by stapling or gluing." (#1 at 4.)

Homeowner filed this lawsuit nine days after her husband inspected the file. She brings six causes of action.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint and eliminates those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (alteration in original) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (*quoting Coons v. Mineta*,

---

[2] An "allonge" is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Allonge, *Black's Law Dictionary* (10th ed. 2014).

410 F.3d 1036, 1039 (8th Cir. 2005)). The Court holds *pro se* plaintiffs "to 'less stringent standards than formal pleadings drafted by lawyers[.]'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

**III. Discussion**

    **A. Wrongful Acceleration (Count I)**

Homeowner alleges that U.S. Bank has no power to accelerate the Note because it is not the "holder" of the Note. It is true that, under Missouri law, U.S. Bank is a "[p]erson entitled to enforce" the Note if it is "the holder of the instrument[.]" RsMo. § 400.3-301. As relevant here, a "holder" means a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" *Id.* § 400.1-201(21)(A). "To be a negotiable instrument, the writing must: (1) be signed by the obligor; (2) contain an unconditional promise to pay a fixed amount of money; (3) contain no other promise, order, or obligation; (4) be payable on demand or at a definite time; and (5) be payable to order or bearer." *Fed. Nat'l Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 668 (Mo. Ct. App. 2014) (*citing* RsMo. §§ 400.3-401; 400.3-104(a)(1)–(3)). The parties seem to agree that the Note is a negotiable instrument.

"'Negotiation' means a transfer of possession . . . of an instrument by a person other than the issuer to a person who thereby becomes its holder." RsMo. § 400.3-201(a). "[I]f an instrument is payable to an identified person, [as it is here,] negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id.* § 400.3-201(b). An "endorsement" is "a signature . . . made *on an instrument* for the purpose of . . . negotiating the instrument[.]" *Id.* § 400.3-204(a) (emphasis added). "For

4

the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." *Id.* "An endorsement pinned or clipped to the instrument is not sufficient. The endorsement must be on the instrument itself or on a paper called an allonge, which is so firmly affixed to the instrument as to become an extension or part of it." *Bremen Bank & Tr. Co. of St. Louis v. Muskopf*, 817 S.W.2d 602, 607 (Mo. Ct. App. 1991).

Again, Homeowner alleges that Milsap & Singer sent her a copy of the Note along with two loose-leaf allonges. She also alleges the allonges were unattached to the Note in the file at Milsap & Singer's office. Thus, according to Homeowner, Conseco Bank's assignment did not negotiate the instrument such that U.S. Bank (as trustee for Conseco Finance Home Equity Loan Trust 2002.A) became a "holder" of the Note. To sum up, the *instrument itself* was never signed, which means it was not endorsed, so it was not negotiated and is still owned by Conseco Bank.

U.S. Bank argues this cause of action should be dismissed because Homeowner "does not allege that the documents her husband saw were the *original* Note and allonges (nor can she because the originals were not at [Milsap & Singer's] office). There is no legal significance to whether *copies* of the Note and allonges were stapled together." (#16 at 4.) Homeowner does not contest that. Instead, she argues that even a copy of the Note and allonges would show certain signs if the allonges were in fact affixed. For example, she claims the copies would have a "shadow" as a result of folding back the papers, or they would have "fly specks" where staples pierced the paper. (#20 at 10.)

5

Because the copies had no shadows and no fly specks, Homeowner argues that her right to relief is more than speculative. The Court disagrees.

"The plausibility standard [that governs motions to dismiss] . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal citation omitted) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). As U.S. Bank explains, the allonges could have been copied or scanned before they were affixed. This count will be dismissed without prejudice. Of course, Homeowner may examine the original Note and allonges and refile.

### B. Quiet Title (Count II)

Homeowner alleges at least three claimants (and possibly more, considering "the tangled mess in the wake of the Conseco bankruptcy and subsequent organizational changes") have an interest in the property at issue: Homeowner, Conseco Bank, and Conseco Finance Home Equity Loan Trust 2002.A. (#1 at 6.) Homeowner asks for a declaratory judgment to quiet title and to declare who owns her home.

"To state a cause of action to quiet title, a plaintiff must allege (1) ownership in the real property, (2) that the defendant claims some title, estate[,] or interest in the real property, and (3) that the defendant's claim is adverse and prejudicial to the plaintiff[.]" *Simms v. Nationstar Mortg., LLC*, 44 F. Supp. 3d 927, 935 (E.D. Mo. 2014). Plaintiff must also "plead . . . facts showing [she], in fact, ha[s] a superior title to the property at

issue." *Dufrenne v. CitiMortgage, Inc.*, No. 4:09-CV-1524-HEA, 2009 WL 5103275, at *3 (E.D. Mo. Dec. 17, 2009).

U.S. Bank argues this cause of action should be dismissed because Homeowner has not pled facts showing that she has a superior title to the property at issue. According to U.S. Bank, "[a]t best, [Homeowner] appears to claim that there is an issue with the assignment of the [deed of trust] to US Bank[.]" (#16 at 4–5.) And even if there were an issue with the assignment, U.S. Bank argues, its "predecessor would still have a superior interest" because Homeowner "admits she is unable to pay the Note which is secured by a [deed of trust] on the Property." (#16 at 5.)

Homeowner disputes this—she says she has not admitted that she is unable to pay the Note. (#26.) Turning to the Complaint, Homeowner alleges, "[i]n May of 2013, [Homeowner] contacted Green Tree which was then servicing the loan to explain that post-divorce, she was having trouble paying a mortgage at a 14 percent interest rate." (#1 at 3.) Homeowner is correct that she never alleged she is currently unable to pay the Note.

But—importantly—Homeowner never alleged that she has made all necessary payments on the Note. Homeowner alleges that she "is now the sole owner" of the property at issue, but her ownership interest is subject to her promise to repay the Note. And Homeowner gave the Note holder a security interest in the property. If Homeowner defaults on the required payments, the Note holder (whoever that might be) has the contractual right to demand the full amount of the unpaid Note. Ultimately, the Note holder has the contractual right to foreclose on the property. Putting aside Homeowner's

7

arguments related to the transfer of the Note, plaintiff has not alleged that she made all required payments. Nor has she alleged that the Note holder lacks the authority, based on the Note and deed of trust, to foreclose.

Under Missouri law, Homeowner "must prevail on the strength of [her] own title and not on any weakness in the title of the other party." *Sohn v. Countrywide Home Loans, Inc.*, No. 15-0636-CV-W-FJG, 2015 WL 7758926, at *2 (W.D. Mo. Dec. 1, 2015) (alteration in original) (*quoting Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 203 (Mo. banc 1996)). Because Homeowner has not alleged facts showing she has a superior title to the property at issue, this count will be dismissed without prejudice.

### C. Strike Arbitration Clause (Count III)

Homeowner asks the Court to strike the Note's arbitration clause. "[B]ecause U.S. Bank has not elected to enforce" the arbitration clause (#25 at 8), this count will be dismissed as moot.

### D. Breach of the Covenant of Good Faith and Fair Dealing (Count IV)

Again, Homeowner alleges that she contacted Green Tree in 2013 because "she was having trouble paying [the] mortgage at a 14 percent interest rate." (#1 at 3.) "A Green Tree agent told [Homeowner] that if she paid $2,300 the lender would re-write her mortgage at the current rate of 3.875 percent." (#1 at 3.) Homeowner paid the $2,300, but the Green Tree agent then told her "there was 'no record' of the Note, that without the Note Green[ T]ree did not know the details of her current mortgage, and without such details, the lender could not calculate a new loan rate." (#1 at 3.) Homeowner apparently continued to pay the 14.8% interest rate.

Homeowner argues that Milsap & Singer's ability to produce the original Note "would seem to be *prima facie* evidence that the Green Tree representative lied to her in 2014 and as such breached the covenant of good faith and fair dealing in contract." (#1 at 8.) Homeowner directed this count against Conseco Bank only. As such, U.S. Bank did not address it in its motion to dismiss. In her response, Homeowner argued that U.S. Bank had waived any defenses to this count. But as U.S. Bank explains, it has no "reason or obligation" to respond to a claim that was not directed at it.

The Court points out that Homeowner also brought Claims II, III, and V against Conseco Bank, and Conseco Bank was served on November 1, 2017 (#6). To date, it has entered no appearance, filed no answer, and filed no motion under Rule 12.

### E. Assignment to U.S. Bank (Count V)

Homeowner alleges that, in 2016, "'Ditech Financial LLC f/k/a Green Tree Servicing LLC f/k/a Conseco Finance Servicing Corp.' attempted to assign [Homeowner's] mortgage to U.S. Bank N.A. as trustee for Conseco Finance Home Equity Loan Trust, 2002.A." (#1 at 3.) Later, "U.S. Bank as Trustee sought to appoint Milsap & Singer PC . . . as substitute trustee." (#1 at 4.) Homeowner asks for a "declaratory judgment that the appointment of the Milsap law firm as successor trustee is void because the Trust did not own the mortgage to make such appointment." (#1 at 9.) The Trust did not own the mortgage, according to Homeowner, because the Trust could not accept new loans in 2016 without losing its tax exempt status. Finding "no publication by the SEC of a change in the Trust's tax exempt status, . . . [Homeowner

concludes the Trust] [could not] have accepted the mortgage on [Homeowner's] property." (#1 at 9.)

U.S. Bank argues Homeowner does not have standing to challenge the assignment because she was not a party to it. With just bare-bone analysis, U.S. Bank relies on a broad statement from a non-binding district court order to support its argument: "for over a century, state and federal courts around the country have . . . [held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment . . . ." *Banks v. HSBC Bank USA, N.A.*, No. 14-00139-CV-W-JTM, 2014 WL 4829541, at *1 (W.D. Mo. Sept. 29, 2014) (alterations in original) (*quoting Livonia Props. Holdings, L.L.C. v. 12840–12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 736–37 (E.D. Mich. 2010)).

Importantly, the district court in *Banks* did not rely on Missouri law to support the quoted proposition. It cited a Michigan district court case that cited as part of a string cite an Eighth Circuit case from 1900. *See Livonia Props. Holdings*, 717 F. Supp. 2d at 737 (*citing Blackford v. Westchester Fire Ins. Co.*, 101 F. 90, 91 (8th Cir. 1900)). And the Sixth Circuit has narrowed the broad statement in *Livonia Properties*, the broad statement that the district court in *Banks* relied on: "[t]he sweeping rule that the district court extrapolated from *Livonia Properties*[, that an individual who is not a party to an assignment may not attack the assignment's validity,] dwarfs our actual holding in [affirming] that case." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 255 (6th Cir. 2014). Thus, U.S. Bank's cited authority—and the parties' briefing more generally—do little to answer the question whether Missouri law allows a debtor who is

10

not a party to an assignment of her mortgage to file a lawsuit challenging the validity of that assignment. As a result, the Court researched the issue independently.

"A debtor may, generally, assert against an assignee . . . any matters rendering the assignment absolutely invalid or ineffective[] and [may also assert] the lack of the plaintiff's title or right to sue[.]" 6A C.J.S. *Assignments* § 133 (June 2018 update). As one court explained, "[o]bligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). "[B]ut, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes." 6A C.J.S. *Assignments* § 133 (June 2018 update).

Here, Homeowner seems to be challenging the validity of the assignment to the Trust. Really, she is alleging the assignment never happened. Otherwise, the Trust would have changed its tax exempt status, or so the theory goes. U.S. Bank argues that "other courts have specifically held that a borrower does not have standing to challenge an assignment based on a violation of the same statute [that prevented the Trust from accepting new mortgages without losing its tax exempt status] at issue here." (#25 at 6.) But this argument misunderstands Homeowner's allegations. As this Court understands the Complaint, Homeowner is not relying on the violation of any statute to challenge the assignment to the Trust. Instead, Homeowner is simply saying the assignment never

11

happened, and she drew that conclusion based on the Trust's continuing tax exempt status.

At the motion-to-dismiss stage, the Court accepts the allegations as true. U.S. Bank has not shown that the alleged assignment to the Trust was effective to pass legal title. If it eventually does so, and if it shows that Homeowner is relying only on defects that would render the assignment voidable at the election of the assignor or those standing in his or her shoes, this claim would fail. For now, the Court has no way of telling whether Homeowner might be at risk of paying the same debt twice. Thus, this count survives the motion to dismiss.

### F. Truth in Lending Act (Count VI)

The Act requires, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the *new owner or assignee* of the debt shall notify the borrower in writing of such transfer[.]" 15 U.S.C. § 1641(g)(1) (emphasis added). Homeowner alleges "U.S. Bank as Trustee did not notify [Homeowner] that her mortgage had been assigned to it, and she only learned of the assignment when [Milsap & Singer] sent her a copy of the assignment in 2017." (#1 at 10.) U.S. Bank argues that Homeowner does not have standing to bring this claim because she has alleged no concrete injury. Homeowner counters that, in certain circumstances, the violation of a procedural right granted by statute alone can be sufficient to constitute an injury in fact.

"When a plaintiff alleges the violation of a procedural right granted by statute, the standing question boils down to this: 'whether the particular procedural violations alleged

12

in this case entail a degree of risk sufficient to meet the concreteness requirement, which in turn depends on whether the particular bare procedural violation may present a material risk of harm to the underlying concrete interest Congress sought to protect in enacting the statutory requirement.'" *Coleman v. Exxon Mobil Corp.*, No. 1:17-CV-119-SNLJ, 2018 WL 1785477, at *3 (E.D. Mo. Apr. 13, 2018) (*quoting Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017)). "Of course, the Court also is guided by history and the judgment of Congress." *Id.* Unfortunately, the parties did not address these issues in their briefing. Still, the Court finds that Homeowner has Article III standing.

By enacting § 1641(g)(1), Congress presumably "meant to provide 'borrowers with the basic right to know who owns their loan by requiring that any time a mortgage loan is sold or transferred, the new note owner shall notify the borrower within 30 days . . . .'" *Talaie v. Wells Fargo Bank, NA*, 808 F.3d 410, 412 (9th Cir. 2015) (alteration in original) (*quoting* 155 Cong. Rec. S5027–03 (2009)).

When a new note owner fails to notify the borrower, and that new owner then attempts to foreclose on a mortgage, there is surely a material risk that the borrower will be left wondering who actually owns his or her loan. After all, a party that did not loan the money is attempting to foreclose on the loan. How will the debtor know whether that non-party actually owns the loan, and has contractual rights based on the loan, or is instead a phony owner?

Historical practice supports the conclusion that Homeowner has standing. Generally, parties to a contract owe no duty to a third party (such as a phony owner) that

13

has no rights under the contract. Indeed, a debtor would not be required to pay a third party unless (1) the third party had rights under the mortgage as it was originally drafted or (2) the lender assigned its rights under the mortgage to the third party. *See, e.g.*, *Credit Gen. Ins. Co. v. NationsBank, N.A. Midwest*, 299 F.3d 943, 944 (8th Cir. 2002) ("An assignment of proceeds is a contract between the assignor and assignee, which upon receipt of notice requires a debtor to pay the proceeds due only to the assignee.")

Finally, the "judgment of Congress" also supports the conclusion that Homeowner has standing. Section 1641(g)(1) reflects Congress's judgment that debtors should know when their loan owner changes. *See Talaie*, 808 F.3d at 412 ("[The introducing senator] stated that while existing law required that borrowers be informed of a change in servicer of their mortgage loan, there was no such notice requirement for a change in loan owner."). And Congress provided a private right of action to remedy a violation. *See* 15 U.S.C. § 1640(a).

Standing aside, the parties are ordered to submit supplemental briefing on the issue whether Homeowner has stated a claim upon which relief can be granted under § 1641(g). By its express terms, § 1641(g)(a) requires "the new owner or assignee of the debt" to notify the debtor. As such, "[t]o recover for a violation of § 1641(g), . . . [Homeowner] must allege that [U.S. Bank] was indeed the transferee of the note and deed of trust and hence was obligated under the statute to give notice of such." *Benitez v. Am.'s Wholesale Lender*, No. CIV.A. H-14-953, 2014 WL 3388650, at *2 (S.D. Tex. July 9, 2014); *id.* (citing cases noting that, to successfully allege a § 1641(g) violation, the plaintiff must show defendant is the new owner or assignee). But Homeowner's lawsuit

14

is based on the opposite claim: she repeatedly alleges that the Trust never owned the Note and that any assignment from the Trust was void.

U.S. Bank shall submit its supplemental brief within seven days, and Homeowner will have seven days to respond.

**IV. Conclusion**

U.S. Bank's motion to dismiss (#15) is granted in part and denied in part. Specifically, Counts I, II, and III against U.S. Bank will be dismissed. The parties are ordered to submit supplemental briefing on Count VI, as explained above.

Accordingly,

**IT IS HEREBY ORDERED** that U.S. Bank's motion to dismiss (#15) is **GRANTED as to Counts I, II, and III** and **DENIED as to Count V**.

**IT IS FURTHER ORDERED** that Counts I, II, and III against U.S. Bank are **DISMISSED**.

**IT IS FURTHER ORDERED** that the parties are ordered to submit supplemental briefing on Count VI, as explained above.

So ordered this __25th__ day of June 2018.

                                                STEPHEN N. LIMBAUGH, JR.
                                                UNITED STATES DISTRICT JUDGE